IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROSALIE L. ROSE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  14-cv-440-CJP**[1] |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Rosalie L. Rose, represented by counsel, seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Rose applied for benefits in November, 2010, alleging disability beginning on October 28, 2010.  (Tr. 17).  After holding an evidentiary hearing, ALJ Bradley L. Davis denied the application for benefits in a decision dated December 17, 2012.  (Tr. 17-25).  The Appeals Council denied review, and the decision of the ALJ became the final agency decision.  (Tr. 1).  Administrative

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).   See, Doc. 8.

remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Plaintiff raises the following points:

1.      The ALJ failed to include all of plaintiff's mental limitations in the hypothetical question posed to the vocational expert.

2.      The ALJ incorrectly weighed the opinion of plaintiff's treating doctor.

3.      The assessment of plaintiff's credibility was erroneous.

4.      The ALJ ignored evidence that supported plaintiff's claim.

### Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C.

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

§423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th

Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Ms. Rose was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Davis followed the five-step analytical framework described above. He determined that Ms. Rose had not been engaged in substantial gainful activity since the date of her application, and that she was insured for DIB only through September 30, 2011. He found that plaintiff had severe impairments of degenerative disc disease, bipolar disorder with psychotic features, fibromyalgia, mild COPD and osteoarthrosis of the left shoulder. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Rose had the residual functional capacity (RFC) to perform work at the light exertional level, with some physical and mental limitations. For mental limitations, the ALJ restricted plaintiff to simple, repetitive tasks and only occasional contact with co-workers, supervisions and the public. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past work as waitress. However, she was not disabled

because there were other jobs that she could do, such as fast food worker, cafeteria attendant and office helper.

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

**1.     Agency Forms**

Ms. Rose was born in 1962 and was 48 years old on the alleged onset date. She was insured for DIB only through September 30, 2011.[3]   (Tr. 176).

Plaintiff filed a Disability Report in November, 2010, in which she said her ability to work was limited by a number of mental and physical conditions, including depression, bipolar disorder, severe mania, and "hearing voices."   (Tr. 179).   She had been fired from her last job on October 28, 2010, because she could not remember what she was supposed to do, could not think well because of voices in her head, and could not focus or concentrate.   (Tr. 180).

**3.     Evidentiary Hearing**

Ms. Rose was represented by an attorney at the evidentiary hearing on November 13, 2012.   (Tr. 32).

Plaintiff testified that her "most disabling" condition was problems with

---

[3]  The date last insured is relevant to the claim for DIB, but not to the claim for SSI.   See, 42 U.S.C. §§ 423(c) & 1382(a).

concentration and thinking.   She had been diagnosed with bipolar disorder.   Her primary care physician, Dr. Schleeper, prescribed Trazodone and Zoloft.   She was not seeing a mental health specialist.   The medications helped to control her thoughts, but they made her very tired.   (Tr. 41-43).

She also had constant pain from degenerative disc disease in her neck and back.   Dr. Schleeper prescribed Hydrocodone, which helped her pain but caused tiredness and hallucinations.   (Tr. 43-44).

Ms. Rose estimated that she was manic for about one week out of the month. During a manic phase, she was very talkative and her mind raced.   When she was depressed, she tried to stay in a room by herself.   (Tr. 62-64).

A vocational expert (VE) testified that plaintiff's past work as a waitress was light and semiskilled.   (Tr. 78).   The ALJ asked him to assume a person of plaintiff's age, education and work experience, who could do work at the light exertional level, limited to no overhead reaching with the left hand and only occasional reaching in other directions, only occasional climbing of ramps, stairs, ladders, scaffolds and ropes; only occasional balancing, stooping, kneeling, crouching and crawling; no work around unprotected heights or moving mechanical parts; occasional operation of a motor vehicle; and occasional exposure to pulmonary irritants and extreme temperatures.   In addition, she had mental limitations to simple routine tasks and making only simple work-related decisions and "she can only occasionally respond appropriately to supervision, coworkers, and work situations, and dealing with change in the work setting."   The VE testified

that this person could not do plaintiff's past work as a waitress, but she could do other jobs that exist in significant numbers in the national and regional economy. (Tr. 82-83).

### 3. Medical Records

Plaintiff was evaluated at Community Counseling Center in January, 2011. An LPN noted that she had been treated in the past by a psychiatrist who prescribed Trazodone and Zoloft, but she had not seen him for over a year because she had no insurance.   She had been diagnosed with bipolar disorder.   She was having increased anxiety, depression and crying.   She heard voices at times but did not have command hallucinations.   She had abused alcohol in the past, but was currently attending AA meetings and had been sober for 10 years.   The Axis I diagnosis was bipolar disorder type 1, mixed, with psychosis and history of alcohol abuse.   She was prescribed Trazodone and Lamictal.   (Tr. 381-383).

Plaintiff continued at Community Counseling Center with therapy as well as periodic medication checks through June, 2011.  (Tr. 359-407).  On June 23, 2011, LPN Katherine Cummins noted that Ms. Rose said she was still depressed, but it was somewhat better than the last visit.   Her "anger issues had not changed." (Tr. 403).   She was given samples of Abilify.   (Tr. 405).   On the same day, another provider at Community Counseling Center noted that she had been unable to afford to fill her prescription for Lamictal.   She was taking Abilify, Zoloft and Trazodone.   On exam, there was no evidence of hallucinations or delusions.   She denied suicidal or homicidal ideas.   Her affect was appropriate and her mood was

almost euthymic, i.e., normal.   She was to continue on her current medications and to continue with counseling.   She was to return in 2 months.   (Tr. 406). There are no further records from Community Counseling Center.

Steven G. Vincent, Ph.D., performed a consultative psychological exam at the request of the agency on January 13, 2011.   Ms. Rose indicated that she had been treated on and off for depression since 2003.   She had been hospitalized in 2007 for 3 days because she was having suicidal thoughts.   Dr. Vincent described her as "somewhat schizoid like in her presentation with her seeming somewhat distant, detached, sluggish, lethargic and lacking in regards to emotional vitality."   She was also guarded and overreacted to innocuous events such as people walking by or telephones ringing.   She had auditory hallucinations and visual disturbances. These factors "resulted in her being cognitively distracted due to preoccupation by her disruptive and often confusing thought processes resulting in irrelevant and digressive ideation interfering with her social communication."   Dr. Vincent diagnosed bipolar disorder, mixed type, with rapid cycling currently in depressed phase with episodes of psychotic deterioration.   He also diagnosed panic disorder with agoraphobia.   (Tr. 261-264).

Ms. Rose was seen at Southern Illinois Healthcare in 2011 for complaints of chest pain, shortness of breath, shoulder pain and fibromyalgia pain.   (Tr. 353-357).

In January, 2012, x-rays of the cervical spine showed uncovertebral and facet arthrosis of the mid and lower cervical spine and mild spondylosis.   X-rays of the

lumbar spine showed facet tropism and facet arthrosis, as well as vacuum cleft lucency of the L3 disc which "may represent annular derangement."   Clinical correlation was recommended.   (Tr. 454).

Plaintiff was seen by Dr. Sonya Schleeper in January, 2012, for neck and back pain.   She said she had been treated at a pain clinic in the past, but it had been "shut down."   She was not taking any medication.   Dr. Schleeper ordered a cervical MRI and prescribed Neurontin and Flexeril.   The MRI showed a bulging disc at C6-7 with flattening of the thecal sac.   She was unable to tolerate Neurontin. Dr. Schleeper prescribed Tylenol with codeine and referred her to a pain clinic. (Tr. 410-412).

On February 24, 2012, on referral from Dr. Schleeper, Dr. Larry Reed administered a diagnostic cervical median branch nerve block.   This relieved some of plaintiff's neck pain.   (Tr. 418-424).

In June, 2012, Dr. Schleeper diagnosed depression and prescribed Trazodone and Zoloft.   (Tr. 414).

4.   **State Agency Consultants' RFC Assessments**

On January 25, 2011, Howard Tin, Psy.D., assessed plaintiff's mental RFC. He used an agency form (Form SSA-4734-F4-SUP) that is commonly used for this purpose in social security cases.   (Tr. 316-319).   This form is referred to as the Mental Residual Functional Capacity Assessment, or MRFCA.   Section I of the form consists of a list of mental activities.   The consultant is asked to set forth his "summary conclusions" by checking a box to rate the severity of limitation as to

each activity.   Dr. Tin checked the box for "moderately limited" for a number of activities, including the ability to maintain attention and concentration for extended periods.   (Tr. 316).   In Section III of the form, the consultant is asked to explain his summary conclusions in narrative form.   Dr. Tin wrote, "She has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks."   (Tr. 318).

## Analysis

The Court first must point out that there are several deficiencies in the briefs. First, plaintiff's brief states that the ALJ determined that that plaintiff became disabled as of November 23, 2011.   See, Doc. 13, p. 12.   Defendant's brief states that the ALJ concluded that plaintiff became disabled as of October 14, 2011.   See, Doc. 22, p. 7.   Both of these statements are incorrect.   In fact, in his written decision dated December 17, 2012, the ALJ determined that plaintiff was not disabled from her alleged onset date of October 28, 2010, through the date of the decision.   See, Tr. 25.

More troubling is the fact that neither party adequately addressed the relevant authority with respect to plaintiff's first point.   In the Court's view, applicable Seventh Circuit precedent requires remand on plaintiff's first point.

Acting as a as a state agency consultant, Dr. Howard Tin assessed plaintiff's mental RFC.   The ALJ noted that, in assessing the B criteria, Dr. Tin found that plaintiff had moderate difficulties in maintaining concentration, persistence and

pace.   (Tr. 23).

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."   SSR 96-6p, at *2.   The ALJ is required by 20 C.F.R. §§ 404.1527(f) and 416.927(f) to consider the state agency consultant's findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, he may not ignore it either, but must consider it and explain the weight given to the opinion in his decision.   See, *McKinzey v. Astrue*, 641 F.3d 884, 891(7th Cir. 2011).   ALJ Davis did so here.   He stated that Dr. Tin's opinion "is consistent with the medical evidence of record and is given significant weight."   Tr. 23.   The ALJ did not state that he rejected any part of Dr. Tin's opinion.

Plaintiff argues that the hypothetical posed to the VE is deficient because it did not account for all of the moderate limitations found by Dr. Tin.   Most notably, the hypothetical question did not address plaintiff's moderate limitations in maintaining persistence, pace or concentration.

Neither party cited *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), a case which is directly applicable.   Having accepted Dr. Tin's opinion, the ALJ was required under *O'Connor-Spinner* to include the moderate limitation in maintaining concentration, persistence or pace in the hypothetical question posed to the VE.

The ALJ asked a series of hypothetical questions.   The question that

corresponded to ultimate RFC findings limited plaintiff to simple work-related decisions and simple, routine, repetitive tasks, but did not address her limitations in maintaining concentration, persistence or pace. (Tr. 82).   In *O'Connor-Spinner*, the Seventh Circuit held that, "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."   *O'Connor-Spinner*, 627 F.3d at 620.   The reason for this holding is that there is a distinction between "the ability to stick with a given task over a sustained period" and "the ability to learn how to do tasks of a given complexity."   *Ibid.*

The Commissioner argues that the ALJ was not required to treat Dr. Tin's checkmarks in Section I of the MRFC form as an opinion.   In support, she cites "*Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (7th Cir. 2010)."   See, Doc. 22, p. 9.   This citation is incorrect.   *Smith* is from the Third Circuit, not the Seventh Circuit.   The only other cases cited by the Commissioner in support of this argument are two cases from the Eastern District of Wisconsin.   However, district court decisions "are not authoritative even within the rendering district."   *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2012).

In her reply brief, plaintiff argues that the Commissioner's position was rejected in *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014).   This Court agrees that the Commissioner's argument is directly contrary to *Yurt. Yurt* was decided on July 10, 2014.   Plaintiff's opening brief was filed on August 6, 2014, and defendant's brief

was filed on November 7, 2014.   Both of those briefs should have addressed *O'Connor-Spinner* and *Yurt*.

Further, the Commissioner's argument glosses over the actual content of Dr. Tin's narrative remarks in Part III of the MRFCA form: "She had difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks." (Tr. 318).   The Commissioner focuses only on the last phrase of Dr. Tin's statement.   However, in this Circuit, binding precedent holds that there is a distinction between ability to perform simple tasks and ability to maintain concentration, persistence and pace.   "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d at 859.   See also, *O'Connor-Spinner*, 627 F.3d at 620.

Under the binding precedents of *Yurt* and *O'Connor-Spinner*, this Court must conclude that the ALJ failed to build "an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC," and that such failure requires remand.   *Yurt,* 758 F.3d at 858-859.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Rose is disabled or that she should be awarded benefits.   On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the

Page **14** of **15**

Commissioner after further proceedings.

## Conclusion

Plaintiff's Motion for Summary Judgment (Doc. 12) is **GRANTED**. The Commissioner's final decision denying Rosalie L. Rose's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   April 21, 2015.**


**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**